UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| 2004 LAMBORGHINI MURCIELAGO VIN # ZHWBU16S64LA01275; | ) |
| $6,100.00 in UNITED STATES CURRENCY; | ) Civil Action No. _____ |
| 2007 MERCEDES BENZ S-550 VIN #WDDNG71X07A086619; | ) |
| 2007 MERCEDES BENZ GL 450 VIN # 4JGBF71E87A191614; | ) |
| CITIBANK CHECKING ACCOUNT #151875564 CONTAINING $2,569.04 (more or less); | ) |
| CITIBANK CHECKING ACCOUNT #152070827 CONTAINING $485,952.00 (more or less); | ) |
| WELLS FARGO CHECK 0648300450 for $191,971.74 from ACCOUNT 6294596132, | ) |
| Defendants. | ) |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

The United States of America, by and through Richard Weber, Chief of the Asset Forfeiture and Money Laundering Section, U.S. Department of Justice, Linda Samuel, Deputy Chief, and Robert Stapleton, Trial Attorney, in a civil cause for forfeiture, respectfully states as follows:

### NATURE OF THE ACTION AND DEFENDANTS IN REM

1.  This is a civil *in rem* action to enforce the provisions of Title 18, United States Code, Section 981 and Title 21, United States Code, Section 881, in order to condemn and forfeit to the exclusive use and benefit of the United States of America the following properties ("the Defendant Properties"): (a) 2004 Lamborghini Murcielago VIN # ZHWBU16S64LA01275; (b) $6,100.00 in United States currency; (c) 2007 Mercedes Benz S-550 VIN #WDDNG71X07A086619; (d) 2007 Mercedes Benz GL 450 VIN # 4JGBF71E87A191614; (e) Citibank Checking Account #151875564 containing approximately $2,569.04, plus interest; (f) Citibank Checking Account #152070827

containing approximately $485,952.00, plus interest; and, (g) Wells Fargo Check 0648300450 for $191,971.74 from Account 6294596132.

## JURISDICTION

2.  This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Sections 1345 (district courts have original jurisdiction of all civil cases commenced by the United States) and 1355 (district courts have original jurisdiction of any action for forfeiture). In addition, this court has *in rem* jurisdiction over the Defendant Properties because a Warrant of Arrest in Rem for the Property will be issued by the clerk of the court, which will be executed upon the Defendant Properties and returned to the Court.

## VENUE

3.  Venue in the District of Columbia is proper pursuant to Title 18, United States Code, Section 981(h), Title 21, United States Code 881(j) and Title 28, United States Code, Section 1395 because the District of Columbia is the district in which the related criminal cases of United States v. Michele Wong, Crim. No. 07-211 and United States v. Zhenli Ye, Crim. No. 07-181 are currently being prosecuted.

## FACTUAL BASIS FOR FORFEITURE

4.  On or about March 22, 2007, pursuant to federal seizure warrants, Defendant Properties 2004 Lamborghini Murcielago VIN # ZHWBU16S64LA01275, $6,100.00 in United States Currency, 2007 Mercedes Benz S-550 VIN #WDDNG71X07A086619, and 2007 Mercedes Benz GL 450 VIN # 4JGBF71E87A191614, were seized from 2290 Casa Bella Court, Las Vegas, Nevada, by duly authorized officers of the United States Drug Enforcement Administration ("DEA"). On or about April 4, 2007, pursuant to federal seizure warrants, Defendant Properties Citibank Checking Account #151875564 (containing $2,569.04 more or less), and Citibank Checking Account #152070827 (containing $485,952.00 more or less) were seized in the District of Nevada. On April 13, 2007, Wah-Ling Hui voluntarily surrendered $191,971.74, consisting of funds drawn from Wells Fargo Check 0648300450. Ever since the seizure, the Defendant Properties have remained in the care, custody, and

control of the United States Marshals Service, Las Vegas, Nevada.

5. The Defendant Properties were subject to administrative summary forfeiture proceedings conducted by the DEA. However, Michele Wong and Zhenli Ye Gon filed claims on July 20, 2007, and July 19, 2007, respectively, for the funds contained in the Defendant bank accounts. Wong filed claims against the three Defendant captioned vehicles on May 25, 2007, and she also filed a claim for the Defendant $6,100 in United States Currency on June 26, 2007.

6. The values of the Defendant Properites are as follows: Lamborghini - US $198,800.00; Currency US $6,100; Mercedes Benz S-550 - US $80,523.00; Mercedes Benz GL 450 - $51,832.00; Citibank Checking Account #151875564 - $2,569.04 (more or less); Citibank Checking Account #152070827 - $485,952.00 (more or less); Wells Fargo Check 0648300450 for $191,971.74 from Account 6294596132.

7. The DEA Mexico City Country Office (referred to as the DEA MCCO), in joint cooperation with the Mexican Attorney General's Office Organized Crime Unit (referred to by its Spanish acronym "PGR/SIEDO"), has been investigating the illicit importation and diversion of precursor chemicals for the manufacture of methamphetamine, particularly pseudoephedrine and ephedrine, by a pharmaceutical wholesaler company named UNIMED PHARMCHEM MEXICO, SA DE CV (referred to as UNIMED) and its owner, Zhenli YE GON, located in Mexico City, Mexico.

8. The investigation revealed that UNIMED had imported into Mexico approximately 20 and 29.4 metric tons of "N-Methyl-Acetylamino" on December 12, 2005, and January 6, 2006, respectively; and a total of 37.485 metric tons of "Hydroxy-Benzyl-N-Methyl-Acetethamine" on August 28, 2006, and September 2, 2006.

9. According to documentation UNIMED provided to Mexican Customs, N-Methyl-Acetylamino is a pharmaceutical intermediate chemical used in analgesic product manufacture. Hydroxy-Benzyl-N-Methyl-Acetethamine was also identified as a pharmaceutical intermediate; however documents did not describe any specific use.

10. However, according to expert information provided by trained DEA Forensic Chemists (FCs), N–Methyl-Acetylamino is a partial chemical identification name, and does not exist as it is listed on UNIMED's shipping manifests. Nor can the product be identified as an intermediate product for analgesic production. DEA FCs also stated that Hydroxy-Benzyl-N-Methyl-Acetethamine does not correspond to any known chemical.

11. On December 5, 2006, UNIMED attempted to import 19.797 metric tons of Hydroxy-Benzyl-N-Methyl-Acetethamine that was flagged for inspection by Mexican Customs at the Pacific seaport of Lázaro Cárdenas, Mexico. A sampling of the substance conducted by the Mexican Customs' Central Laboratory identified it as N - Acetylpseudoephedrine, a derivative of pseudoephedrine/ephedrine. This is a controlled substance under Mexican federal health law, as well as Mexican federal precursor law, making it illegal for UNIMED to import.

12. On April 26, 2007, DEA FCs and DEA Special Agent (SA) Eduardo Chavez traveled to the UNIMED manufacturing plant in Toluca, Mexico, to analyze any chemicals or residues present at the plant. This plant had been secured by Mexican authorities since the execution of a Mexican federal search warrant at that location on March 15, 2007. The DEA FCs took samples of chemical residue found in equipment and locations throughout the site, including samples that tested positive for the presence of ephedrine. It is believed the plant was used for the production of pseudoephedrine and ephedrine using an N-Acetyl derivative as the starting material.

13. Mexican federal prosecutors and health officials told the DEA that UNIMED pharmaceutical did not have any authority to import, manufacture, distribute, or possess any pseudoephedrine or ephedrine related material after 2005.

14. Former advisors to the Mexican Federal Commission for the Protection Against Sanitary Risks (referred to by its Spanish acronym of COFEPRIS) stated that UNIMED, as a pharmaceutical wholesaler, did not have any legal authority to import, export, manufacture, or distribute any product containing pseudoephedrine or ephedrine. COFEPRIS also indicated that all legitimate pharmaceutical laboratories operating in Mexico must go through COFEPRIS to obtain

permits to buy and/or sell pseudoephedrine/ephedrine. COFEPRIS is charged with oversight and regulatory control over all pseudoephedrine and ephedrine imports, exports and distribution within Mexican territory.

15. Based on the aforementioned information, investigators concluded that YE GON and UNIMED intentionally imported and manufactured pseudoephedrine/ephedrine for illegal purposes, due to the fact that (1) UNIMED did not have the proper authority to import, export, distribute, or possess any such product, and (2) no legitimate pharmaceutical manufacturer would risk criminal liability in purchasing such products from UNIMED. Thus, these large quantities of pseudoephedrine/ephedrine must have been destined for the only other market that would require such quantities: the clandestine methamphetamine manufacturing market.

16. Based on conversations with other law enforcement officials both in the United States and Mexico, investigators know that the number of clandestine methamphetamine laboratories have sky-rocketed over the past three years in Mexico, while simultaneously decreasing in the United States. This has been due to tighter international regulations on the control of precursor chemicals such as pseudoephedrine and ephedrine, and aggressive law enforcement activity in the United States against clandestine methamphetamine laboratories.

17. In 2004, Mexico undertook aggressive measures to apply existing law for precursor chemicals to dampen what was suspected to be large amounts of criminal diversion, particularly that of pseudoephedrine and ephedrine for clandestine methamphetamine laboratories. While it always has been illegal to import and divert pseudoephedrine and ephedrine, Mexican authorities applied sections of the law that allowed only pharmaceutical laboratories, not wholesalers, access to deal in pseudoephedrine and ephedrine under tight, documented regulations. These steps had the effect of creating a lucrative black market for pseudoephedrine and ephedrine amongst methamphetamine manufacturers.

18. N-Acetylpseudoephedrine is a derivative of pseudoephedrine/ephedrine that can be converted back into pseudoephedrine/ephedrine at a conservative ratio of approximately 1:0.6 (*i.e.*,

5

1  one pound of N-Acetylpseudoephedrine would yield 0.6 pounds of pure pseudoephedrine/ephedrine). At this rate, YE GON and UNIMED's importations of suspected N-Acetylpseudoephedrine totaled approximately 86.885 metric tons, which would conservatively convert into approximately 52,240 kilograms of pseudoephedrine/ephedrine. Based on conversations with DEA FCs, a conservative yield of methamphetamine is at least 70% of the amount of pseudoephedrine/ephedrine used, thus potentially producing an amount of approximately 36,568 kilograms of pure methamphetamine.

19. In early March, PGR/SIEDO solicited and received authorization to execute Mexican federal search warrants at YE GON's residence and UNIMED's corporate headquarters, both in Mexico City, and UNIMED'S pharmaceutical plant located in Toluca, Mexico.

20. Upon execution of the search warrant at YE GON's residence, PGR/SIEDO federal prosecutors and agents identified $205,564,763 in U.S. Dollars, $39,010 in U.S. traveler's checks, and approximately $2,000,000 (converted to U.S. Dollars) worth of various foreign currencies hidden in compartments, false walls, suitcases, and closets within YE GON's residence.

21. Additionally, jewelry and luxury vehicles purchased for or by YE GON were located and seized, many of which included receipts indicating payment in U.S. dollars to commercial establishments in the United States. Documentation from various Las Vegas, Nevada, casinos including player's club identifications and purchases from designer stores within Las Vegas casinos, were located and seized. Seven weapons were also located and seized, including multiple handguns, a fully automatic AK-47 assault rifle, and multiple boxes of ammunition.

22. Following the execution of the Mexican federal search warrant at UNIMED's corporate headquarters, Mexican federal attorneys and agents located and seized an additional $111,000 in U.S. Currency, as well as documentation regarding several bank accounts located in the United States, China, and Hong Kong, as well as wire transfer confirmation pages from *casas de cambios* to banks throughout the United States and Europe.

23. Also found was a handwritten note addressed to YE GON in Spanish with the following translated text, "Zhenli, I hope that you are fine, due to the detention of the flour, my

associates and I had some problems and had to spend the three books that you provided us. I am fine now and have contact with customs. Call me to work." The note contained a cellular telephone number and was signed "Amigos".

24. As a result of the investigation described above, information on several luxury vehicles and properties in Las Vegas, Nevada, in which YE GON was listed as the lien holder was forwarded to the DEA Las Vegas District Office for follow up investigation.

25. As the result of this public information and further investigation by the DEA Las Vegas District Office, a State of Nevada search warrant was executed at 2290 Casa Bella Court, Las Vegas, NV, on March 22, 2007, which was associated with YE GON. Michele WONG was the listed owner of the property along with her mother, Wah-Ling HUI.

26. WONG told DEA agents that she first met YE GON in October 2004 when she was a casino host at the Mirage Hotel and Casino in Las Vegas, NV. WONG stated that she performed host duties for YE GON while she was employed by The Mirage, and she became personal friends with YE GON during that time. WONG stated that she was fired from The Mirage in January 2005, and that she became romantically involved with YE GON in approximately February 2005. WONG stated that she has not held any other employment since she was fired from The Mirage.

27. WONG stated that while romantically involved with YE GON, he gave her approximately one to one and a half million dollars over the course of their relationship. WONG stated that she used the money YE GON gave her to purchase jewelry, two Mercedes Benz', and her residence located at 2290 Casa Bella Court, Las Vegas, NV 89117, which was in her and her mother's names. During their relationship, WONG gave birth to a child and stated that YE GON was the father.

28. WONG stated that she assisted YE GON with the purchase of equipment for UNIMED and the manufacturing plant YE GON owns in Toluca, México. This assistance included purchasing air conditioning units from York Industries and transformers from the MGM Corporation. WONG arranged to ship these items to YE GON in México, and YE GON wired her $500,000 USD to pay for the equipment. YE GON allowed WONG to keep any money left after the purchase of the

equipment. WONG stated that YE GON wired the money into her Citibank account.

29. WONG stated that around May 2006, YE GON told her that a Mexican organized crime group began blackmailing YE GON in México in March 2006. YE GON told WONG that the group told him to cooperate with them or they would kill him and his family. According to WONG, the group wanted to store cash at YE GON's residence in México City. Prior to May 2006, WONG claimed that she believed YE GON's source of money was from UNIMED, his pharmaceutical business. YE GON told WONG that he was not personally involved in narcotics trafficking, but the people who were storing the money at his residence and threatening him were involved in narcotics trafficking.

30. According to WONG, the Mexican organized crime group not only wanted YE GON to store the cash in his residence in Mexico City, but they also wanted YE GON to launder the money. YE GON told WONG that he knew the money in his house was "dirty money" and the proceeds of narcotics trafficking. YE GON stated to WONG that he continually received threats against himself and his family, so he believed that he had to launder the money. YE GON told WONG that the group instructed him to launder the money in Las Vegas, NV, and that he should gamble with the money and purchase high value items in Las Vegas. WONG said that YE GON would frequently receive push-to-talk telephone calls on his Nextel cellular telephone from the traffickers with instructions on how to launder the funds. YE GON told WONG that the traffickers instructed him to use his bank accounts to send the money to Las Vegas where he could launder it, and that the money in YE GON's accounts at the Venetian was drug money.

31. WONG stated that when she purchased her residence located at 2290 Casa Bella Court, Las Vegas, NV, 89117, she used approximately $300,000 that YE GON gave her as a down payment in April 2006. In addition, WONG stated that she paid off the mortgage within three months (July 2006) of purchasing the residence and that she again used funds YE GON had given to her to pay off the loan, knowing the funds YE GON gave her were the proceeds of crime.

32. Title records from First American Title Company of Nevada were seized from 2290 Casa Bella Court that detailed the purchase of said property. According to these records, WONG purchased this residence on April 24, 2006, with her mother for $1,138,000. The down payment on this residence totaled $305,108. WONG and HUI obtained $853,500 in loan financing to cover the purchase of this residence.

33. On May 31, 2007, DEA uncovered public documents showing that WONG placed the house and the land on which it sits into an irrevocable trust for the benefit of her son, Michael Ye Wong and made HUI the trustee. A quitclaim deed dated April 26, 2007 signed by WONG and HUI show the property was transferred to the irrevocable trust for no consideration. In the month prior to WONG establishing the irrevocable trust for the real estate, the U.S. District Court of Nevada had issued seizure warrants 2:07-MJ-00217-LRL, 2:07-MJ-00215-LRL, 2:07-MJ-00220-LRL, 2:07-MJ-00221-LRL, 2:07-MJ-00219-LRL, 2:07-MJ-00218-LRL, and 2:07-MJ-00216-LRL for the Defendant Properties consisting of personal property held by WONG, based on allegations that those assets were related to, or were proceeds derived from, criminal violations discovered during this investigation.

34. The Las Vegas investigation also revealed records showing that between 2004 and early 2007, YE GON lost approximately $125,917,839 USD in various hotels and casinos in Las Vegas.

35. On July 26, 2007, a grand jury holding a criminal term in the District of Columbia indicted ZHENLI YE GON for various narcotics violations, including conspiracy to aid and abet the manufacture of 500 grams or more of methamphetamine knowing or intending that it will be imported into the United States, violations of 21 U.S.C. §§ 959, 960, and 963.

36. On August 21, 2007, a grand jury holding a criminal term in the District of Columbia indicted MICHELE WONG for one count of conspiracy to engage in monetary transactions in property derived from specified unlawful activity and nine counts of engaging in monetary transactions in property derived from specified unlawful activity, violations of 18 U.S.C. §§ 1956(h) and 1957. All of the Defendant Properties were listed in the indictment as proceeds of, or involved in, the offenses charged by the Grand Jury.

## FIRST CAUSE OF ACTION

37. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

38. The Defendant Properties are proceeds traceable to exchanges of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, and are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION

39. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

40. The Defendants Properties were involved in transactions, or attempted transactions, in violation of Sections 1956 and 1957 of Title 18, United States Code, or property traceable to such property, and are, therefore, subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## CONCLUSION

41. Based on the foregoing, the Defendant Properties are subject to seizure and to forfeiture to the United States of America, under 21 U.S.C. § 881(a)(6) and 18 U.S.C. 981(a)(1)(A).

WHEREFORE, the United States of America, Plaintiff, prays as follows:

A. Due process issue to enforce the forfeiture of the Defendant Properties;

B. Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed;

C. The Defendant Properties be condemned and be forfeited to the United States;

D.   That Plaintiff be awarded its costs and disbursements in this action and such other and further relief as this Court deems proper and just; and,

E.   This Court enter other and further relief as it deems just and proper.

DATED this 23rd day of August, 2007.

                Respectfully submitted,

                RICHARD WEBER, CHIEF
                ASSET FORFEITURE AND
                MONEY LAUNDERING SECTION

                _____
                ROBERT STAPLETON, NY BAR #4076568
                LINDA M. SAMUEL, DC BAR #388970
                U.S. Department of Justice
                Criminal Division
                Asset Forfeiture and
                 Money Laundering Section
                1400 New York Avenue, N.W., Suite 10100
                Washington, D.C. 20530
                (202) 514-1263

                Attorneys for Plaintiff United States

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

United States of America

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

2004 LAMBORGHINI MURCIELAGO VIN # ZHWBU16S64LA01275, $6,100.00 in UNITED STATES CURRENCY, 2007 MERCEDES BENZ S-550 VIN #WDDNG71X07A086619, 2007 MERCEDES BENZ GL 450 VIN # 4JGBF71E87A191614, CITIBANK CHECKING ACCOUNT #151875564 CONTAINING $2,569.04, CITIBANK CHECKING ACCOUNT #152070827 CONTAINING $485,952.00, WELLS FARGO CHECK 0648300450 for $191,971.74 from ACCOUNT 6294596132

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Robert Stapleton
1400 New York Ave., NW
Suite 10100
Washington, DC 20005

## ATTORNEYS (IF KNOWN)

Allen Dale
David Chesnoff
Richard Schonfeld
Ning Ye
Martin McMahon

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⦿ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☒ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255*<br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination*<br>☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Title 18, United States Code, Section 981 and Title 21, United States Code, Section 881 - defendant properties are the proceeds of crime

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE August 23, 2007    SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

## VERIFICATION

I, Adam Lambert, Special Agent, Drug Enforcement Administration, am the Agent assigned to this case.

I have read the contents of the foregoing Complaint for Forfeiture In Rem, and I declare and verify under penalty of perjury that the foregoing is true and correct.

DATED: _August 23, 2007_

_____
ADAM LAMBERT, Special Agent
Drug Enforcement Administration